May it please the Court, Laura Gracer appearing for the appellant. I submit that this case has troubling facts on the nature of the stop. The defendant's brother was driving down the street, minding his own business. The police officer, for no reason that appears anywhere in the record, decided to simply run the plates and then to get a registered owner, run the registered owner, determine that the registered owner was a middle-aged Hispanic man. Notice that the driver was a middle-aged Hispanic man and made a stop. For reasons that we don't know from the record, this led to an arrest. It was a violation, driving while suspended is what he was stopped for, for some unknown reason. Let's assume that you don't win on the stop. Does your case then go away? Does it all turn on the legitimacy of the stop? There are no findings on the stop, and it's the troublingness of the stop. The inevitable discovery is the issue. They have my client now. He has lawfully identified himself with either an ID, a mere ID that doesn't permit him to drive, or a driver's license. The government didn't establish which one it was. I submit it was more likely than not it was simply an ID. He identifies himself accurately. And at that, the question is, if it's a bad stop, can the government now determine his identity and use that not simply to deport him. We agree that they can use it to deport him under the Lopez case. But can they use it to criminally prosecute him and give him the significant sentence that he's serving? And I submit it's simply if they can't, the exclusionary rule does not need to exist in this case. This is exactly why. Are you contending that your client has a reasonable expectation of privacy while acting as a or not acting while a passenger in his brother's car? A reasonable expectation that he can mind his own business, yes. Well, that's not what I'm going to. The reality is that when you drive a car, you're open, everybody can see you. I gather in following up on Judge Fisher's point that if your whole case seems to revolve around the stopping of the vehicle in the first place, is that correct? That's how he came to the attention of the authorities. Right. So if we find that the stop was appropriate, everything that followed thereafter, you're not contesting that? Well, the stop of the brother, you know, it's the brother that's driving. I understand. Why do they ask for the passenger's I.D.? And once they get the Oregon I.D. card that doesn't authorize them to drive. Right. Why don't they just why do they run it? He ran it. The officer testified that if Oregon I.D. cards, they run because it's customary. And we submit that that's the key to the case. You're contending that it is unlawful for the police to ask for identification from passengers in cars that have been stopped for purposes of running I.D.? The first part of your sentence, yes. The second part, no. He produces his I.D. The photograph matches him. He says, this is who I am. Here's my picture I.D. At that point, it needs to stop. And your view is that the law would, at that point, prohibit the police from running an I.D. check of any kind? Yes. And do you have any legal cases or statute of what you're relying? The line of cases is can they, at that point, then use that to do an immigration investigation? This is a state investigation. And can they do it at that point? And I say that that's what the, essentially what Wong Sung is all about. Well, apart from the immigration cases, why is checking a license plate a search? Your license plate is sitting out there in public on public exhibition all day long. Any officer who wants to can look at it and look at his notes and say, do we want this car for any reason? No. It's the two-step process. And there's Oregon cases that say that can't be done. It's not in my brief. Simply, because he gives the police officers too much discretion, this is in the middle of a small community. Driving down the street, they pick that car at random. Why do they pick that car? We don't know. But they pick the car. They run the license. They see it. Well, we can suspect why they did it. But on the record, the paper record, what they did was make a license plate check, which they have every right to do. Right. And the car came back not stolen. Nothing wrong with the car. No reason to be concerned about the car. Why did they then take the information they got from the computer of who the registered owner of the car was and run to see if he is suspended? Why did they do that? I submit it's racially inappropriate. Well, that's what police do. That's how they catch people that aren't supposed to be driving. But this is just a random inquiry. I mean, that's what it seems to me it's that what the Constitution does is to stop police officers from just randomly picking out the, I mean, the overtone of this case is to pick out the beat-up pickup trucks that are being driven by middle-aged Hispanic men. But they wouldn't be able to do anything about it unless their check turned up something like the fact that they were driving without a license or driving with a suspended license. How else are they supposed to discover that? I'm sorry. I'm sorry. I'm not driving with a suspended license. And I'm driving in a car when I'm not supposed to be. And they run a license check, and they find out that the car is registered. And then they run a check on the owner of the car, who is the presumptive driver, and find out that the owner is not supposed to be driving. I've got a suspended because of eight DUIs. You're suggesting that that is an unreasonable inquiry that the police can't make? Well, yes, initially. And we're talking now about, of course, a violation DUI, not you would be felony suspended if you had eight DUIs. But it's the randomness, why this car is, I think, the focus of this case. They were on a program, so if they adopted, as they do with the road laws, they can't make a random search. Yes. I mean, I think this has overtones of roadblock cases. Every tenth car, perhaps. But some system other than the system that just cries out from this record is the system that they use, which is middle class. Doesn't New York versus class, the New York Supreme Court case, undercut that? That's a case that indicated that the driver had no expectation of privacy. This had to do with vehicle identification. You know, they just picked these people up. There was no probable cause. They stopped the car. They checked the identification. And what followed followed, and the Supreme Court upheld that. There was no problem with that. I apologize. I'm not familiar with that case. I mean, this case really is, I think, a roadblock case in disguise. It's randomly stopping a car with no discernible articulated reason. It sounds like the gravamen of your case is you're saying that because these were male Hispanics, that you want us to impute scienter, if you will, to the police officer, that they picked them up because they were Hispanic and that everything flowed there from as a result of that. Is that correct? Is that what you're saying? Well, I think that's the district judge's call, and he didn't make findings. So at the very least, what I'm asking this Court to do is ask it to go back to the district court and ask that question be made because the officer wasn't asked. It's not in the record. Counsel, we have to go on what's on the record. What can you point to in the record that will help us understand your point? I mean, you're implying, in effect, racism. Where in the record does it indicate anything like that with respect to the conduct of these officers? It's the government's burden as to establish why this process happened. In other words, you're saying it's the government's burden to show why they stopped an automobile based on a license check? Why they stopped this automobile as opposed to the one next to it. Okay. We'll let you save the rest of your time for rebuttal. Thank you. If it pleases the Court, Ms. Grazer, Barry Sheldon for the United States. Your Honor, I think in answer to your question, in our view, this whole case is dependent on the lawfulness of the stop, and if this Court finds it was lawful, all the other issues go away. We think we've established in our brief that this stop was based on probable cause and at a minimum reasonable suspicion. This Court has repeatedly held that a traffic violation is sufficient to stop a car. In this case, the deputy ran the plates, which are open to the public. They're not protected by any privacy interest, learned that the registered owner was suspended, observed that the driver of the vehicle matched the description of the registered owner. That, in our view, is probable cause. But at a minimum, it's reasonable suspicion. What do you do with the issue, though, as to, yes, licenses are out there in public, they're there for a purpose, but unless the automobile has reflected any, in its operation has reflected any violation, like the tag is expired on the plate or the driver is doing something that appears to be a traffic violation, what's the authority for simply making random checks of the status of drivers of apparently properly licensed cars? It doesn't implicate the Fourth Amendment. There's no privacy interest in your driver's license number or your vehicle license number, so there's no Fourth Amendment implication at all. And I guess the inference is in the defendant's brief that there's some kind of racial profiling going on in this case, and so I wrote down four answers to that allegation. Number one, there's no evidence of that in the record at all. Number two, correlation does not imply causation. In other words, the fact the defendant is Hispanic doesn't mean there is racial profiling going on. Number three, under Supreme Court law, it's not relevant. The Wren case we cite in our brief says that the subjective intent of the officer is not relevant. You have to see if he has objective reasons to make the stop, and in this case those objective reasons were driving while suspended. What about the passenger's driver's license check? What's the reason for that? Again, Your Honor, the officer testified he was prepared. He had to arrest the driver, and he was prepared to let the passenger drive the vehicle home if he was a licensed driver, so he was going to check on that basis. Otherwise, he'd have to impound the vehicle and probably have to get the passenger home somehow. Or the impound yard. In any event, that was the reason he gave. And again, asking someone for their identity or for their license does not implicate the Fourth Amendment. Well, I guess the Rackus case took care of that. I'm sorry? Rackus v. Illinois, I think, took care of that. Outstanding. In any event, we think Judge Marsh was correct that the stop was fully lawful under the law, but we go on that even if this Court finds the stop was unlawful, the prints in this case still come in. The defendant sought to suppress his identity, and both this Court and the Supreme Court have held as a general rule a person cannot suppress their identity based on a Fourth Amendment violation. And I cite Mendoza-Lopez and Guzman-Bruno from this circuit for that proposition. Now, I know there's a big debate, and there is an exception to the rule. This Court has said that where the fingerprints are taken for an investigatory purpose as opposed to an identification purpose, they can be suppressed. And that language I don't think is felicitous, but what I understand it to mean is if you don't connect a defendant with a crime and you need his fingerprints to find the crime and you don't have probable cause, you can suppress those prints. Counsel, following up on Ms. Grazer's point, let's just say that there was a program to check the identity of only Hispanic males. Would you think that the fact that there's no right to privacy with respect to licenses, would that protect the government in this case? No. There has to be either probable cause or reasonable suspicion to stop the vehicle. That vehicle is protected by the Fourth Amendment, so you can't just stop it to check all Hispanics or all whatevers. You have to have a traffic violation or a crime of some kind to stop it. And in our view, driving while suspended is a crime in Oregon, and that was the reason for the stop. Now, what about her point that when he didn't produce a driver's license, he only produced an ID card? What was the point of running that, since an ID card wouldn't give him authority to drive the car, which was the stated purpose of the inquiry? Well, it is unclear, Your Honor, what he produced. The officer said he couldn't remember. He thought it was either an Oregon driver's license or an Oregon ID card. Would an Oregon ID card let him drive the car? No, and that's why the officer was checking. He wanted to see if he was a licensed driver. And when he checked, he found out there was a warrant for his arrest, a federal warrant, and that led to his arrest. So an ID card would link to a driver's license, so that would have been a legitimate way to find out? Yes, and I think, although it's not apparent, there are a lot of counterfeit documents out there, too, and I think the officer wanted to check to make sure he had the real thing. And in this case, as counsel said, the defendant gave his true name, and that's why the fingerprints weren't necessary to link him to the crime. INS had his name, they found his A file, referred him for criminal prosecution before the prints were even identified. Therefore, we say the prints were simply taken for identification purposes and are not suppressible in any event. And lastly, under the law of this Court, even if you suppress everything here today, I think I can go back to district court and ask for a fingerprint exemplar, and the defendant has to provide it. Okay. Okay. Thank you. Four points. One is, an Oregon I.D. card, one obtains because one doesn't have the entitlement to drive, and so it would be nonsensical to say he would run his I.D. card to see if he could drive. You only have I.D. cards if you don't have a driver's license? Right. It's a way, for example, for blind people, for example. But you don't have both? You wouldn't have both, no. Can you get both? I don't believe so. Okay. Is that in the record? No. Okay. And the false I.D. argument makes no sense at all. I mean, there's no hint anywhere that he thinks this is a false I.D. It's an Oregon I.D. card is what I think is the logical conclusion. There's no findings to the contrary. Under Oregon law, the stop must be for probable cause, and the officer said he had probable cause. So he had reasonable suspicion to run the plates, and then probable cause when the plates came back middle-class Hispanic. And, you know, we can see that the prints come in any time the government wants to deport him. The question is whether or not this is a criminal offense. And, you know, this was an investigation. At the very least, we're asking this Court to remand to Judge Marsh to make findings about whether or not these unsettling racial profile overtones are in fact there. All right. Fine. Thank you. Counsel, we appreciate the argument. And the case argued is submitted.
judges: Goodwin, Fisher, Smith